1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE DISTRICT OF COLUMBIA

8
9

PUBLIC EMPLOYEES FOR ENVIRONMENTAL

10

RESPONSIBILITY,

No.  1:11-cv-261(BJR)

11
12

*Plaintiff*,

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS
MOTION FOR SUMMARY JUDGMENT

13

v.

14

UNITED STATES SECTION INTERNATIONAL

15

BOUNDARY AND WATER COMMISSION,

16

U.S. -MEXICO,

17
18
19

*Defendant.*

20
21

        This Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, case comes before

22

the court on cross motions for summary judgment. Plaintiff, Public Employees for

23

Environmental Responsibility ("PEER"), filed this action against Defendant, United States

24

Section, International Boundary and Water Commission, U.S.-Mexico ("USIBWC"), under the

25

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, *as amended*, and the

ORDER-1

Administrative Procedures Act ("APA"), 5 U.S.C. § 701, challenging the agency's response to Plaintiff's August 10, 2010 FOIA request. Defendant USIBWC filed a Motion for Summary Judgment ("Defendant's Mot.") (Dkt. No. 6). Plaintiff responded with a Cross Motion for Summary Judgment and Opposition to Defendant's motion ("Plaintiff's Cross Mot.") (Dkt. No. 8). Defendant filed its opposition to the Plaintiff's cross motion and reply in support of its Motion for Summary Judgment ("Defendant's Opp./Reply") (Dkt. No. 10). Plaintiff then filed a reply in support of its Cross Motion ("Plaintiff's Reply") (Dkt. No. 13) and a Notice of *Errata* (Dkt. No. 14). These motions are ripe for resolution. For the reasons set forth below, the court hereby grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross Motion for Summary Judgment.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff PEER is a non-profit organization engaging in research, education and litigation with the stated goal of promoting public understanding of environmental issues of public interest. Defendant USIBWC is a federal government agency and the U.S. component of the International Boundary and Water Commission ("IBWC"), which applies the boundary and water treaties of the United States and Mexico and settles differences that may arise in their application. This case involves a request for certain documents related to the safety of dams on the Rio Grande river.

By letter dated August 10, 2010, PEER submitted a FOIA request to USIBWC seeking the following documents:

(1)    A copy of the November 2009 report issued by a panel of technical advisers regarding the condition of Amistad Dam and plan of action;

(2)    All emails and documents that relate in any way to the November 2009 report;

ORDER-2

(3)     Current inundation maps and emergency action plans for areas downstream of Falcon Dam and Amistad Dam;

(4)     Any and all emails and documents regarding plans or decisions to maintain water storage at or near full conservation levels in Falcon and Amistad dams at any time during 2010;

(5)     Any and all emails and documents regarding plans or decisions to release water from Falcon and Amistad dams at any time during 2010;

(6)     Any and all geotechinical reports on the Presidio levee prepared since 2006;

(7)     Any and all emails and documents dated on or after January 1, 2009 that relate in any way to geotechnical reports on the Presidio levee; and

(8)     Any and all emails and documents dated on or after January 1, 2009 that relate in any way to demolition and/or reconstruction of any levees located in or adjacent to Canutillo and Mesilla.

On September 28, 2010, the USIBWC responded by letter to PEER's FOIA request. First, with respect to (1) and (2), the USIBWC informed PEER that it was unable to locate a November 2009 report as referenced in the request, or any emails or documents relating to such a report. Next, with respect to (3), the agency stated that it located two responsive documents but that it withheld both pursuant to FOIA pursuant to Exemption 5[1] on the grounds that each document was a draft protected by the deliberative process privilege. In response to (4), the agency explained that it located responsive documents and released all but two, again asserting Exemption 5. Finally, with respect to the rest of PEER's requests (5)-(8), above, the agency located and released responsive documents. The USIBWC provided PEER with 1,492 pages of information responsive to its request, and withheld 383 pages.

---

[1] FOIA requires federal agencies to disclose records upon request unless the records fall within one or more enumerated exemptions. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *see* 5 U.S.C. § 552.

ORDER-3

On October 15, 2010, PEER appealed the agency's response to its FOIA request. Specifically, PEER challenged the USIBWC's failure to provide the following:

(1)     A copy of the November 2009 report issued by a panel of technical advisers regarding the condition of Amistad Dam and plan of action;

(2)     All emails and documents that relate in any way to the November 2009 report;

(3)     Current inundation maps and emergency action plans for areas downstream of Falcon Dam and Amistad Dam;

PEER alleged that the USIBWC did not respond to its FOIA request in good faith. In particular, PEER argued that the agency was not being truthful about the existence of the November 2009 report. In support, PEER attached a copy of an article from a local newspaper, the *Brownsville Herald,* that discussed the agency's response and plan of action with respect to sinkholes at the Amistad Dam. The article mentioned that the newspaper had requested a copy of a November 2009 report issued by a panel of technical advisors regarding the condition of the Amistad Dam, but that the USIBWC had refused to release it, citing Exemption 5. In addition, with respect to (3), PEER objected to the agency's failure to explain why Exemption 5 would apply to inundation maps.

By way of letter dated November 29, 2010, the USIBWC partially denied PEER's appeal. The agency informed PEER that as part of the appeal process, it "re-conducted" its search for a "November 2009" report on the Amistad Dam, and confirmed that it was unable to locate such a document. However, USIBWC went on to explain that, aided by PEER's reference on appeal to the *Brownsville Herald* article, the agency realized, for the first time, that PEER's description of a "November 2009" report in (1) and (2) appeared to be an effort to obtain information about a report dated October 2009 on the same topic (the "Joint Expert Panel Review"). The USIBWC

ORDER-4

admitted that it was in possession of the Joint Expert Panel Review, but invoked Exemption 2 to withhold it on the grounds that disclosure of such information "could facilitate illegal acts against critical infrastructure." With respect to PEER's request for emails and documents relating in any way to this report, the agency stated that it conducted a new search and located 12 documents. The agency provided 11 of these documents to PEER, withholding one pursuant to Exemption 5. Last, the USIBWC addressed PEER's appeal of its response to (3), pursuant to which PEER sought current inundation maps and emergency action plans for areas downstream of Falcon Dam and Amistad Dam. The agency noted that, with respect to the inundation maps, upon repeating its search for responsive material, it located, for the first time, a binder containing 77 drafts of such maps. The agency explained, however, that all were being withheld pursuant to Exemptions 2 and 5, on the grounds that the disclosure of such information could facilitate illegal acts against critical infrastructure. With respect to the emergency plans requested as part of (3), the USIBWC located two documents which it released in redacted form. The USIBWC asserted Exemptions 2 and 6 to justify the redactions, explaining that the information withheld included the private contact information of certain agency employees. The USIBWC also explained that where possible, as required by the FOIA, it disclosed segregable information in responsive documents. Finally, the USIBWC advised PEER of its right to seek judicial review of the partial denial of its appeal. In all, the USIBWC provided Plaintiff with 1,492 responsive documents and withheld in full 383 documents.

On January 31, 2011, PEER filed this lawsuit to compel the USIBWC to disclose the records it withheld. The complaint contains two causes of action. First, PEER alleges that the USIBWC's failure to disclose the information sought was a violation of the FOIA, as well as the

ORDER-5

agency's regulations promulgated thereunder. Second, PEER alleges a violation of the Administrative Procedure Act ("APA") on the same facts, claiming that the USIBWC's failure to release all information requested is arbitrary and capricious, and an abuse of discretion. PEER requests an order declaring that the USIBWC wrongfully withheld the requested records, and asks the court to issue an injunction directing release of the same. PEER also seeks attorneys' fees and costs.

On March 7, 2011, after PEER instituted this action, but before the USIBWC filed a response to the complaint, the U.S. Supreme Court decided the case of *Milner v. Dep't of the Navy*, 131 S. Ct. 1259 (2011). In *Milner*, the Court curtailed the application of FOIA Exemption 2, holding that it is applicable only to records relating to the issues of employee relations and human resources. *Milner,* 131 S. Ct. at 1271. The Supreme Court held that the Department of the Navy, therefore, could not assert Exemption 2 as grounds for withholding sensitive explosive maps and data known as Explosive Safety Quantity Distance ("ESQD") information. *Id.* The USIBWC had asserted Exemption 2 to protect certain information responsive to PEER's FOIA request that could not be characterized as relating only to issues of employee relations and human resources. In light of the *Milner* decision, the agency reviewed its response to PEER's FOIA request. But instead of releasing the information previously withheld pursuant to Exemption 2, the USIBWC invoked other FOIA exemptions, including Exemptions 5, (7)(F), and (7)(E), to justify these withholdings.

In lieu of an answer, USIBWC filed a Motion for Summary Judgment on April 11, 2011. On May 16, 2011, PEER filed a Cross Motion for Summary Judgment. These motions are both

ORDER-6

ripe for resolution. On January 26, 2012, this case was reassigned to Judge Barbara Jacobs Rothstein.

II.   **STANDARD OF REVIEW**

   **a.  The Freedom of Information Act**

The fundamental purpose of the FOIA is to assist citizens in discovering "what their government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). The FOIA strongly favors openness, as Congress recognized in enacting it that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (citation omitted). The purpose of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). Thus, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361.

Under the FOIA, an agency may withhold responsive information only if the information falls within one of several enumerated statutory exemptions. 5 U.S.C. § 552(b). An agency asserting that responsive information should be withheld pursuant to an exemption must provide a detailed description of its reasoning. This is accomplished through the submission of a so-called "*Vaughn* index," sufficiently detailed affidavits or declarations, or both. *Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The agency bears the burden of justifying the assertion of an exemption. *See Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (2007). Further, because the focus of FOIA is "information, not documents . . . an agency cannot justify withholding an entire document simply by showing that

ORDER-7

it contains some exempt material." *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (citation and internal quotation marks omitted). Therefore, the FOIA also imposes on federal agencies a duty to provide to a requester all non-exempt information that is "reasonably segregable." 5 U.S.C. § 552(b). Non-exempt portions of documents must be disclosed unless they are "inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (citations and internal quotation marks omitted).

**b.  The Administrative Procedures Act**

The APA subjects agency action to judicial review only if "there is no other adequate remedy in a court," 5 U.S.C. § 704. The APA, 5 U.S.C. § 706, provides that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

ORDER-8

### c. Summary Judgment

The court will grant a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits or declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). An agency satisfies the summary judgment requirements in a FOIA case by providing the court and the Plaintiff with affidavits or declarations and other evidence which show that the documents in question were produced or are exempt from disclosure. *Hayden v. National Sec. Agency/Central Sec. Service*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980). Summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

ORDER-9

Generally, an agency's declarations or affidavits are referred to as a *Vaughn* index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). There is no set formula for a *Vaughn* index. "[I]t is well established that the critical elements of the *Vaughn* index lie in its function, and not in its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997). The purpose of a *Vaughn* index is "to permit adequate adversary testing of the agency's claimed right to an exemption." *National Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 527 (D.C. Cir. 1986) (*citing Mead Data Central,* 566 F.2d at 251, and *Vaughn*, 484 F.2d at 828). Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *National Treasury Employees Union*, 802 F.2d at 527 n.9. "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

## III.   MOTIONS FOR SUMMARY JUDGMENT

The USIBWC contends that it has released all responsive, non-exempt records pursuant to PEER's FOIA request, and that it is therefore entitled to judgment as a matter of law. The USIBWC submitted, in support its Motion for Summary Judgment, a Statement of Material Facts not in Genuine Dispute, a Memorandum of Points and Authorities, a *Vaughn* index outlining the bases for withholding responsive information, and a Declaration by Steven Fitten, who is the Chief Freedom of Information Act Officer for the USIBWC ("First Fitten Decl.") (Dkt. No. 6). Attached to the First Fitten declaration are copies of correspondence between the parties relating

ORDER-10

to PEER's FOIA request, and a copy of a Department of Homeland Security ("DHS") overview of the Dams Sector of the National Infrastructure Protection Plan.  The USIBWC's responsive filing contains: (1) a second declaration by Steven Fitten ("Second Fitten Decl.") attaching an Intelligence Alert by DHS regarding a potential threat to the Falcon Dam; (2) a copy of FEMA's Emergency Action Planning for Dam Owners dated April 2004; (3) a declaration by Luis Hernandez, a Civil Engineer with the Safety of Dams, Operations and Maintenance Division of USIBWC ("Hernandez Decl.") attached to which is documentation of the U.S. Army Corps of Engineers classification of the Falcon and Amistad dams; and (4) a declaration by Carlos Peña, Engineer for Special Operations Division, Offices of Safety, Security & Emergency Management at USIBWC ("Peña Decl.") (Dkt. No. 10). The USIBWC also attached to a Notice of *Errata* updated declarations by Steve Fitten ("Third Fitten Decl.") and Carlos Peña ("Second Peña Decl.") (Dkt. No. 14).[2]

PEER accuses the USIBWC of bad faith. PEER contends that the agency intentionally denied the existence of certain requested documents, and withheld records to which PEER is entitled under the FOIA. PEER also challenges the USIBWC's assertions of various FOIA exemptions, including the agency's contention that it is justified in withholding information related to dam safety pursuant to a FOIA Exemption 7. In support of its motion, PEER included a Statement of Material Facts not in Genuine Dispute, and two Memoranda of Points and Authorities (Dkt. Nos. 8 and 13).

---

[2] PEER challenged the Second Declaration of Steve Fitten and the Declaration of Carlos Peña, arguing that these statements did not comply with 28 U.S.C. § 1746, which requires that a declaration be subscribed to as true under penalty of perjury. Defendant's Opp./Reply, at 4. In response, the USIBWC withdrew and resubmitted these declarations, correcting the error. *See* Notice of *Errata* (Dkt. No. 14).

ORDER-11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

IV.   **ANALYSIS**

 **a.  The APA**

 As an initial matter, the court finds that PEER's claims brought pursuant to the APA cannot survive summary judgment.  The APA subjects agency action to judicial review only if "there is no other adequate remedy in a court," 5 U.S.C. § 704. "[I]n determining whether an adequate remedy exists, [the D.C. Circuit] has focused on whether a statute provides an independent cause of action or an alternative review procedure." *El Rio Santa Cruz Neighborhood Health Center, Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F. 3d 1265, 1270 (D.C. Cir. 2005). Where a statute, such as the FOIA, provides an opportunity for *de novo* district court review of an administrative denial, APA review is precluded. "This court and others have uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA." *Feinman v. FBI,* 713 F. Supp. 2d 70, 76 (D.D.C. 2010).  *See, e.g., Kenney v. U.S. Dep't of Justice*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009) (FOIA precluded APA claim that defendant improperly withheld records responsive to plaintiff's FOIA request). Therefore, the court dismisses Count II of Plaintiff's Complaint.

 **b.  Adequacy of the FBI's Search for Responsive Documents**

 Upon receipt of a request under the FOIA, an agency must search its records for responsive documents. See 5 U.S.C. § 552(a)(3)(A). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia–Lucena v. United States Coast Guard*, 180 F. 3d 321, 325 (D.C. Cir. 1999) (*quoting Truitt v. Dep't of State*, 897 F. 2d 540, 542 (D.C. Cir. 1990)); *see also Campbell v. U.S. Dep't of Justice*, 164 F. 3d 20, 27 (D.C. Cir. 1998). Thus, an agency

ORDER-12

bears the burden of showing that its search was adequate. *Steinberg v. United States Dep't of Justice*, 23 F. 3d 548, 551 (D.C. Cir. 1994). To meet its burden, an agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F. 2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id., at* 127.

The USIBWC contends that its search methods were reasonably calculated to uncover all responsive documents. The agency outlines, in the Declaration of Steve Fitten, The Chief Freedom of Information Act Officer at the agency, the process by which the USIBWC responds to FOIA requests. First Fitten Decl., at ¶12. First, upon receipt of a FOIA request, the staff at the Legal Affairs component of the USIBWC reviews the request, assesses where responsive documents might be located within the agency, and forwards the request to the correct division. *Id.* In this case, based on the type of information sought by PEER, Mr. Fitten states that he sent the FOIA request to the Safety Dam Section within the Operation and Maintenance Division, which at the time of the search, served as USIBWC's technical experts for the review and preparation of reports and recommendations concerning dam safety. *Id.* Mr. Fitten explains that the Safety Dam Section also develops and issues policy statements and guidance regarding dam safety. *Id.* Mr. Fitten reports that Mr. Luis Hernandez of the Safety Dam Section was the individual who conducted the actual search for documents responsive to the FOIA request. *Id.* According to Mr. Fitten, Mr. Hernandez has significant experience with reports and technical documents relating to the Amistad Dam, the Falcon Dam, and the Presidio Levee. *Id.*

ORDER-13

PEER argues that USIBWC's response was inadequate. First, PEER contends that the agency acted in bad faith when it initially indicated that it located just two documents responsive to PEER's request for inundation maps and emergency action plans for areas downstream of Falcon Dam and Amistad Dam. After PEER filed its appeal, the agency informed PEER that upon review, it discovered a binder containing 77 drafts of inundation maps. First Fitten Decl., at ¶¶21-22. The USIBWC admits that it missed this binder on its initial search for responsive documents, but denies that this failure constitutes proof of either bad faith or an otherwise inadequate search. To the contrary, the agency asserts, proof of its good faith may be found in the fact that once it located the binder, it informed PEER of the existence of the 77 draft inundation maps. The court agrees.

First, the fact that the USIBWC did not discover every responsive record in its initial search does not itself show bad faith. "[T]his Circuit has held that, under the FOIA, it is unreasonable to expect even the most exhaustive search to uncover every responsive file; what is expected of a law-abiding agency is that the agency admit and correct error when error is revealed." *See Western Center for Journalism v. IRS,* 116 F. Supp. 2d 1, 10 (D.D.C. 2000), *aff'd* 22 F. App'x 14 (2001) (rejecting plaintiff's argument that agency's initial failure to turn over additional responsive documents demonstrated bad faith). Second, it is well-established that "[t]he adequacy of a search is not determined by its results, but by the method of the search itself." *Harrison v. Fed. Bureau of Prisons*, 681 F.Supp.2d 76, 81–82 (D.D.C. 2010) (*citing Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir.1984)). *See also Judicial Watch, Inc. v. U.S. Secret Service,* 579 F. Supp.2d 143, 148 (2008) ("the question is not whether the agency has found every possible responsive document, but whether the search was reasonable in

ORDER-14

light of the relevant circumstances."). Mr. Fitten's declarations demonstrate that the agency's search for responsive documents was reasonably calculated to uncover all relevant documents.

PEER also accuses the agency of lying about the Joint Expert Panel Review, the existence of which the agency initially denied. In response to PEER's appeal, the USIBWC acknowledged for the first time that such a report existed, claiming to have not understood PEER's reference in its FOIA request, to a November 2009 report. The agency explained that the report sought was actually dated October 2009. PEER challenges this explanation, pointing out that on the USIBWC's website, the agency refers to this report being dated November 2009. The USIBWC responds that its Safety Dams Section was unaware of the date of the report on the agency website, and that it was not until PEER's appeal and reference to the newspaper article that Mr. Hernandez, who conducted the actual search, understood which document PEER sought. First Fitten Decl., at ¶17-18. The court finds this explanation to be credible. "Once an agency has explained the adequacy of its search by affidavit, the burden shifts back to the plaintiff to demonstrate a lack of a good faith search." *Wilson v. U.S.. Dep't of Transp.,* 730 F. Supp.2d 140, 149 (2010) (citation omitted). In the instant case, PEER has not presented the court with any evidence of bad faith. Incredulity alone cannot undermine the presumption of good faith that is accorded to agency affidavits. *See Chamberlain v. U.S. Dep't of Justice,* 957 F. Supp. 292, 294 (D.D.C. 1997), *aff'd,* 124 F.3d 1309 (D.C. Cir. 1997) ("Agency affidavits enjoy a presumption of good faith that withstands purely speculative claims about the existence and discoverability of other documents."). The court, therefore, finds that the USIBWC has successfully demonstrated that its search for documents responsive to PEER's FOIA request was reasonably calculated to uncover all relevant documents.

ORDER-15

### c.  FOIA Exemptions

Congress created nine FOIA exemptions that allow agencies to withhold specific materials to avoid harming legitimate government interests. 5 U.S.C. § 552(b). PEER challenges the USIBWC's assertion of several exemptions in this case.

### 1.  Exemption 2

Exemption 2 shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). In response to PEER's FOIA request, the USIBWC asserted Exemption 2 to justify withholding certain information, including the Joint Expert Panel Review (once properly identified), Emergency Action Plans ("EAPs") for the Falcon Dam and Power Plant and the Amistad Dam and Power Plant, as well as dam failure inundation maps. As explained in Section I, above, on March 7, 2011, the U.S. Supreme Court decided the case of *Milner v. Department of the Navy*, 131 S. Ct. 1259 (2011). In *Milner*, the Court severely curtailed the application of Exemption 2, holding that it could no longer be used to justify withholding records on the grounds that disclosure would risk circumvention of the law or federal agency functions. *Milner,* 131 S. Ct. at 1271. The Supreme Court ruled that "consistent with the plain meaning of the term 'personnel rules and practices,'" Exemption 2 "encompasses only records relating to issues of employee relations and human resources." *Id.* As explained in Section I, above, in light of the *Milner* decision, the USIBWC withdrew its reliance on Exemption 2, and invoked other FOIA exemptions, including Exemptions 5, (7)(f), and (7)(e), to justify its withholdings. Because the USIBWC no longer asserts that information has been withheld pursuant to Exemption 2, the court need not consider its application.

ORDER-16

### 2.  Exemption 5

Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). This exemption thus encompasses documents that would be protected from disclosure by one or more legal privileges, such as the attorney work product privilege or the deliberative process privilege. *Williams & Connolly v. Securities and Exchange Commission,* 662 F. 3d 1240, 1243 (D.C. Cir. 2011).

The documents for which USIBWC claims Exemption 5 protection are:

- An electronic email dated November 13, 2009, providing comments on interim risk reduction measures; and

- The Joint Expert Panel Review of the Amistad Dam.

### i.  Threshold Issue

The threshold issue under Exemption 5 is whether the records in question qualify as inter-agency or intra-agency memoranda. 5 U.S.C. §552(b)(5). "[A]gency" is defined in the statute to mean "each authority of the Government," 5 U.S.C. §551(1). It includes entities such as Executive Branch departments, military departments, Government corporations, Government-controlled corporations, and independent regulatory agencies. 5 U.S.C. §552(f). The USIBWC contends and the court agrees, that the November 13, 2009 email meets the Exemption 5 threshold because it is an internal communication between agency employees regarding deliberations and comments as to interim risk reduction measures.

The Joint Expert Panel Review, however, was authored by a panel of experts and consultants who are not employees of the USIBWC. The agency explains that the Joint Expert Panel Review was authored by employees of the United States Army Corps. of Engineers and the

ORDER-17

United States Bureau of Reclamation. First Fitten Decl., at ¶18, and *Vaughn* Index attached to Defendant's Mot. as Exhibit 1 (Dkt. No. 6). The Joint Expert Panel Review was prepared to assist the USIBWC in its evaluation of the potential risks in the Amistad Dam's foundation and embankment. First Fitten Decl., at ¶18. The document also provided the agency with recommendations about the Amistad Dam's safety rating, and included "considerations about the types of metrics that the USIBWC might consider key in its continued examination of deficiencies, strengths, adequacies and projections." *Id.*

Although this report was not prepared by agency employees, the agency nevertheless contends that it meets the Exemption 5 threshold. Indeed, some courts have extended the protection of Exemption 5 to documents prepared for an agency by outside consultants. "In such cases, the records submitted by outside consultants played essentially the same part in an agency's deliberative process as documents prepared by agency personnel." *Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001). This extension of the definition of "intra-agency" is called the "consultant corollary." *Klamath*, 532 U.S. at 11. The consultant corollary is available where the consultant

> does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it. Its only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do.

*Klamath,* 532 U.S. at 11. In *Klamath¸* itself, however, the Supreme Court declined to extend the consultant corollary to protect from disclosure documents that were submitted by certain Indian tribes at the request of Bureau of Indian Affairs in course of administrative and adjudicative proceedings. *Id., at* 12-13. The Court was unwilling to characterize the tribes, who not only had

ORDER-18

an interest in the matter at issue, but who were "self-advocates at the expense of others seeking benefits inadequate to satisfy everyone," as consultants that were effectively acting as employees of the agency. *Id., at* 12. PEER likens the facts of the instant case to those in *Klamath,* arguing that the Joint Expert Panel Review was written by representatives of agencies that could hardly be considered interchangeable with USIBWC employees. PEER explains that on the agency website, there is a description of the technical advisors who drafted the report, and that the group included, for example, representatives of the Mexican National Water Commission ("CONAGUA"). The USIBWC contends that the authors of the Joint Expert Panel Review acted as expert advisors of the agency in preparing this report, and had no interests divergent from those of the USIBWC. The USIBWC argues that the facts of this case are much closer to those presented in *McKinley v. Federal Deposit Insurance Corp.*, 647 F. 3d 331 (D.C. Cir. 2011), than to those in *Klamath*.

In *McKinley*, the court found that the Board of Governors of the Federal Reserve System ("Board") properly withheld information related to the Board's decision to authorize the Federal Reserve Bank of New York ("FRBNY") to provide a temporary loan to FRBNY member banks. *McKinley,* 647 F.3d at 337-39. The court held that unlike the Indian tribes, the FRBNY did not represent an interest of its own, or the interest of any other client, when it advised the Board about the financial condition of the relevant banks. *McKinley,* 647 F. 3d at 337. The *McKinley* court accepted the characterization of the FRBNY "as an operating arm" of the agency. *Id.* The court explained that Exemption 5:

> was created to protect the deliberative process of the government, by ensuring that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity. In the course of its day-to-day activities, an

ORDER-19

> agency often needs to rely on the opinions and recommendations
> of temporary consultants, as well as its own employees. Such
> consultations are an integral part of its deliberative process; to
> conduct this process in public view would inhibit frank discussion
> of policy matters and likely impair the quality of decisions.

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F. 3d 331, 339 (D.C. Cir. 2011)

(citation omitted).

The USIBWC has assured the court that the responsibility of the panel that worked on the

Joint Expert Panel Review of the Amistad Dam was assisting the USIBWC. First Fitten Decl., at

¶18. There is not the slightest indication that these experts represented any outside interests. It

appears that their function was simply to provide accurate information for the USIBWC to use in

making various determinations with respect to the Amistad Dam. PEER has provided no

evidence in contradiction. The court is therefore satisfied that the Joint Expert Panel Review of

the Amistad Dam fairly may be characterized as an "intra-agency" memorandum. The court

turns to the second part of the Exemption 5 inquiry:  whether the November 13, 2009 email and

the Joint Expert Panel Review may be withheld under the Deliberative Process privilege.

### ii.     Deliberative Process Privilege

Exemption 5 encompasses, among other things, documents that would be protected from

disclosure by the deliberative process privilege. *Williams & Connolly v. Sec. and Exch. Comm'n,*

662 F. 3d 1240, 1243 (D.C. Cir. 2011). The deliberative process privilege

> covers recommendations, draft documents, proposals, suggestions,
> and other subjective documents which reflect the personal opinions
> of the writer rather than the policy of the agency. Documents
> which are protected by the privilege are those which would
> inaccurately reflect or prematurely disclose the views of the
> agency, suggesting as agency position that which is as yet only a
> personal position.

ORDER-20

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (citation omitted). To be protected by the deliberative process privilege, documents must be both "predecisional" and "deliberative." *Public Citizen, Inc. v. Office of Management and Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010). A document is "predecisional" if it is generated prior to the adoption of an agency policy, and "deliberative" if it "reflects the give-and-take of the consultative process." *Id.* (citation omitted). The agency must carry the "burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States*, 617 F.2d at 868 (*citing Vaughn v. Rosen (Vaughn II)*, 523 F.2d 1136, 1146 (D.C. Cir. 1975)).

### a.   The November 13, 2009 Email

The USIBWC explains that the November 13, 2009 email contains opinions and comments on the draft Emergency Action Plan, and was generated before the USIBWC's adoption of a completed Emergency Action Plan on October 30, 2010. First Fitten Decl., at ¶18. But PEER objects to the assertion of Exemption 5 with respect to the email, arguing that it was, in fact "an operational communication regarding implementation measures taken with respect to the technical adviser's Plan as adopted by the agency." Plaintiff's Cross Mot., at 28. PEER, however, presents the court with no evidence to support its theory. The court finds that the agency has carried its burden of demonstrating that the November 13, 2009 email is a predecisional document. The email is also clearly deliberative. Indeed, it is precisely the type of communication that the deliberative process privilege is designed to protect:  one that "reflects the give-and-take of the consultative process." *Public Citizen, Inc.*, 598 F.3d at 874 (citation omitted). With respect to the November 13, 2009 email, therefore, the court finds that the

ORDER-21

USIBWC has carried its burden of establishing that it was properly withheld pursuant to Exemption 5.

### b.  The Joint Expert Panel Review

The agency states that the Joint Expert Panel Review is both predecisional and deliberative, as it was generated to provide recommendations to the USIBWC as part of the USIBWC's continual process of examining the potential for risks in the foundation of the Amistad Dam. Fitten Decl., at ¶ 18. PEER objects, contending that even if the Joint Expert Panel Review was predecisional at the time it was created, it has since lost that status. PEER cites to the USIBWC website itself for proof that the Joint Expert Panel Review was ultimately adopted by the USIBWC as its own project plan, and that it has actually been implemented:

> The agency initiated the implementation of several elements recommended in the consensus report, one of which includes the Risk Analysis Study. Dependent on the results from the Risk Analysis Study and the availability of funds, the agency anticipates the initiation of the following work in FY 2010: 1) Foundation and embankment studies, to include stability studies, 2) Installation of additional embankment and foundation piezometers, 3) Further investigation of the 'sinkhole area', 4) Further investigation of a previously reported 'depression' area located on the upstream embankment, in Mexico, having proximity to the 'sinkhole area', 5) A geotechnical 'Willow stick survey' and a Remote Operated Vehicle/Hydrophone survey.

Plaintiff's Cross Mot. for Summary Judgment at 28, *citing* http://www.ibwc.gov/Mission_Operations/SoD_Amistad.html.

PEER is correct that even if a document is "predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866. Whether a document has in fact been "adopted" by an agency depends in large part on the function and

ORDER-22

significance of the document in the agency's decisionmaking process. This type of determination is necessarily fact-dependent, but it is also driven by a "strong theme" in this circuit's opinions such that an "agency will not be permitted to develop a body of secret law, used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as formal, binding, or final." *Coastal States*, 617 F.2d at 867 (citations and internal quotation marks omitted).

In the instant matter, where there is no concern that the USIBWC is attempting "develop a body of secret law," the reasoning in *Coastal States* has no application. Moreover, the court is unpersuaded by PEER's assertion that the Joint Expert Panel Review has been adopted to the extent that it can no longer be viewed as predecisional. PEER's citation of a few lines of text on the USIBWC website in which the agency indicates that it intends to implement some of the recommendations contained in the Joint Expert Panel Review is far from convincing proof that the agency has adopted the document as policy. In the court's view, the Joint Expert Panel Review is not only clearly predecisional, but deliberative as well. The USIBWC convened a panel of experts to assess the structural condition of the Amistad Dam, and to make recommendations with regard to the dam's safety rating. First Fitten Decl., at ¶18. The resulting document neatly "reflects the give-and-take of the consultative process." *Public Citizen*, 598 F. 3d at 874. The court finds that the USIBWC has carried its burden of demonstrating that the Joint Expert Status Review is predecisional and deliberative, and that its assertion of Exemption 5 to withhold this document from PEER was justified.

ORDER-23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

### 3.  Exemption 6

Exemption 6 exempts from disclosure personnel and medical files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. §552(b)(6). If a court determines that a substantial privacy interest is at stake, the court must balance the public interest in disclosure against the individual privacy concerns. *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002).

In the instant case, the USIBWC asserts Exemption 6 to justify its redactions of private contact information of emergency personnel from its EAP for the Falcon Dam and Power Plant, Falcon Heights, TX, and from its EAP for Amistad Dam and Power Plant, Del Rio, TX. The agency explains that the information withheld consists of the personal cell phone numbers and home phone numbers of various emergency personnel for use by USIBWC staff in case of an emergency. First Fitten Decl., at ¶ 23. Plaintiff, however, contests the application of Exemption 6. First, Plaintiff argues that emergency personnel whose names and cell phone numbers are in an EAP have waived any privacy interest in their contact information. Second, Plaintiff argues, even if these personnel retain some privacy interest in their contact information, such interest is weakened by the fact that the information was included in the EAPs. Defendant counters that although the Plaintiff believes the privacy interests are very weak, it has done nothing to show what the countervailing public interest might be. The court agrees. As this circuit has often noted, where there is no public interest in the release of information, "something, even a modest privacy interest, outweighs nothing every time." *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). The court finds that the USIBWC correctly invoked

ORDER-24

Exemption 6 to withhold the contact information of emergency personnel whose names appear in the above-referenced EAPs.

### 4. Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7). In order to withhold materials properly under Exemption 7, an agency first must establish the threshold issue, that the records at issue were compiled for law enforcement purposes, and then that the material satisfies the requirements of one of the subparts of Exemption 7. *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).

The documents for which the USIBWC asserts Exemption 7 are portions of the following:

- Two Emergency Action Plans ("EAPs"), for the Falcon Dam and Power Plant, in Falcon Heights, TX, and for the Amistad Dam and Power Plant in Del Rio, TX; and

- Dam Failure Inundation Maps (77 maps as well as maps included in the EAPs).

The USIBWC asserts Exemption 7(e) to justify withholding various guidelines for law enforcement that are contained in the EAPs, and Exemption 7(f) to protect all the inundation maps both in the EAPs and in the belatedly-discovered binder.

### i. Threshold Issue

The USIBWC contends that both the EAPs and the inundation maps were compiled for law enforcement purposes and thus qualify for protection under Exemption 7. In assessing whether records were compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to

ORDER-25

anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted). Therefore, an agency must show some nexus between the compilation of the record at issue, and a legitimate law enforcement purpose.

The USIBWC begins by outlining the agency's relationship to law enforcement. It explains that USIBWC is a member agency of the Interagency Committee on Dam Safety ("ICDS") established by the National Dam Safety Act, 33 U.S.C. § 467 *et seq.* First Fitten Decl., at ¶2. As a ICDS member, the USIBWC explains that it is "responsible for the establishment and maintenance of federal programs, policies, and guidelines on dam safety for the protection of human life and property through coordination among federal agencies concerning the implementation of Federal Guidelines for Dam Safety." *Id.* The agency notes that the ICDS works in conjunction with the Office of Infrastructure Protection ("OIP") within the Department of Homeland Security ("DHS") which serves as the Sector-Specific Agency for the Dams Sector of the National Infrastructure Protection Plan (NIPP). *Id.*, at ¶ 3. The USIBWC states that according to the NIPP, Dam Sector, due to the potential to cause massive downstream casualties and severe economic impact, dams are considered a possible terrorist target. *Id.*, at ¶4. As a result, the NIPP, Dam Sector, apparently has encouraged all owners and operators of dams to take protective measures such as integrating security into existing emergency plans and increasing liaison with all levels of law enforcement. *Id.*, at ¶5. The agency claims that concerns about terrorist activity involving dams are legitimate, noting, for example, that on or about April 29, 2010, the DHS informed the USIBWC of a specific threat that had been made against the Falcon Dam. *Id., at* ¶6. In addition, the agency states that it received information in May 2010,

ORDER-26

such that criminal organizations in Mexico allegedly had developed plans to breach the Amistad and Falcon Dams by using strategically-located explosive devices, with the intention of causing destructive floods. Third Fitten Decl., at ¶¶ 3-4.

Next, the agency asserts that the inundation maps, which identify and delineate areas that would be affected by floods, were created to assist emergency management officials, including the Federal Bureau of Investigation and US Border Patrol, in protecting property and lives during an emergency caused by dam failure. First Fitten Decl., at ¶ 22. The maps apparently show estimated travel times for flood progression, times for peak elevation of waters, and other information critical to law enforcement in case of an emergency. *Id.* The agency contends that the two EAPs likewise were created to assist law enforcement agencies in managing emergency situations. *Id.,* at 23. Therefore, the USIBWC asserts, given that dams are a potential target for terrorist attacks, and given the huge threat to public safety in the event of a dam failure, there is a real nexus between its role of ensuring dam safety and such threats, that involve law enforcement.

PEER vigorously disputes the USIBWC's contention that the EAPs and inundation maps were compiled for law enforcement purposes, and goes to substantial lengths attempting to disassemble the agency's claim. PEER maintains that the agency has acted in bad faith, both in responding to its FOIA request, and also in its representations to the court in the briefs on these motions. First, PEER challenges the USIBWC's assertion that the dams in question are potential targets of terrorist attacks, claiming that a "possible terrorist target could describe just about any public or private infrastructure of any type anywhere in the country." Plaintiff's Cross Mot., at 2-3. PEER argues that the April 2010 threat to which the agency referred was "immediately

ORDER-27

debunked as a hoax[,]" *id.*, at 13, and likewise challenges the legitimacy of the May 2010 threat. Defendant's Opp./Reply, at 4. Second, PEER claims that the fact that the USIBWC is a member of the ICDS is irrelevant, arguing that "virtually every federal agency . . . sits on at least one interagency committee concerning critical infrastructure." Plaintiff's Cross Mot., at 3. Moreover, PEER claims, the agency overstates its role in encouraging coordination among federal agencies with respect to dam safety. *Id.* According to PEER, it is the ICDS itself, rather than individual member agencies, that is charged with encouraging coordination among federal agencies with respect to dam safety. *Id.* Finally, PEER draws the court's attention to the fact that some agencies, including the Federal Emergency Management Agency ("FEMA") and the U.S. Army Corps of Engineers ("USACE"), apparently encourage dam owners and operators to share EAPs and inundation maps with downstream communities, recognizing that such documents contain information critical to the public. *Id.*, *at* 4-6. For example, according to PEER, the USACE has posted online all inundation maps for the Wolf Creek Dam in Kentucky, and the government of California routinely posts such maps online. *Id.*, *at 6-8.*

PEER's attempt to characterize as disingenuous the USIBWC's concern that its dams might be attractive targets for terrorists does nothing to alter the reality that such concerns may be valid. The court is aware that it is widely accepted that dams are a matter of concern for homeland security, and as such, implicate law enforcement. Similarly, the court is unmoved by PEER's assertion that this country has many such potential terrorist targets. A suggestion that the likelihood of a terrorist attack on, in particular, the Amistad Dam or the Falcon Dam, compared with any other national infrastructure, may be relatively low, does not negate the fact that the

ORDER-28

USIBWC's activities have a nexus with law enforcement, or that these documents were, in fact, compiled for a law enforcement purpose.

Finally, the court is not swayed by PEER's argument that other agencies have reached different conclusions with respect to the need to withhold EAPs and inundation maps. The question before the court is not whether the USIBWC would have been justified in releasing the inundation maps and EAPs, it is whether the USIBWC's assertion of Exemption 7 to justify withholding this information, in this case, is sound.

The court finds that the USIBWC has demonstrated the required nexus between its activites and law enforcement. The agency has explained, in detail, how its activities relating to dam safety interact with law enforcement. Furthermore, courts recognize that law enforcement within the meaning of the Exemption 7 threshold extends to matters of homeland security. *See, e.g., Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) (finding law enforcement threshold is met by records compiled in course of investigation into breach of national security). A relevant example may be found in *Living Rivers, Inc. v. US Bureau of Reclamation*, 272 F. Supp.2d 1313 (D. Utah 2003), in which the court examined an agency's refusal to disclose inundation maps pursuant to a FOIA request. In *Living Rivers*, the Bureau of Reclamation ("BOR") withheld inundation maps pursuant to Exemption 7(F), asserting that disclosure could reasonably place risk of life or physical safety to those who occupy the downstream areas of the Hoover or Glen Canyon Dam. *Id.,* at 1321. The BOR argued that because the maps included such details as estimated travel times for flood progression, terrorists could use the maps to cause massive harm to the lives of others. *Id.* The *Living Rivers* court agreed, and held that the agency had satisfied its burden of justifying its decision not to disclose

ORDER-29

the maps. PEER argues that *Living Rivers* is inapplicable because in that case, the court found that Congress had provided the BOR with express law enforcement authority" to "maintain law and order and protect person and property within Reclamation projects and on Reclamation lands." *Id., at* 1319, *citing* 43 U.S.C. § 373b(a). But in the instant case, the inundation maps and EAPs were created at the request of FEMA and relate to the nation's homeland security in the event of an emergency. *See* Hernandez Decl., at ¶10 and Third Fitten Decl., at ¶6.

The court is of the opinion that given the potential for threats against the dams operated by USIBWC, as well as the potential for harm to public safety, the inundation maps and EAPs are documents that were compiled for law enforcement purposes. The court holds that the USIBWC has carried its burden to show that the threshold requirement for Exemption 7 has been met for both the EAPs and the inundation maps.

## ii.    Exemption 7(E)

Exemption 7(E) protects from disclosure records or information, compiled for law enforcement purposes, to the extent that the production of such records or information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions. *Showing Animals Respect and Kindness v. U.S. Dep't of Interior*, 730 F. Supp.2d 180, 199-200 (D.D.C. 2010) (stating the Fish and Wildlife Service properly withheld its surveillance techniques that could compromise its ability to conduct future investigations at wildlife refuges). Exemption 7(E)'s second clause separately

ORDER-30

protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law." *See, e.g.*, *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts").

The USIBWC asserts Exemption 7(E) to justify withholding various guidelines for law enforcement that are contained in the EAPs for the Amistad and Falcon Dams and Power Plants. The agency explains that it properly withheld portions of the EAPs including, for example, "descriptions of surveillance plans, logistics and conclusions meant for use by the USIBWC and emergency management personnel as guidelines and procedures in the event of an emergency such as a terrorist attack." Defendant's  Mot., at 16; First Fitten Decl., at ¶ 24. PEER argues that the disclosure of the law enforcement guidelines contained in the EAPs would not endanger the life or physical safety of anyone. But this argument is premised on PEER's unsubstantiated contention that the USIBWC dams are not a genuine target for terrorist activity. The court has already rejected that argument.

The court finds that the USIBWC properly withheld portions of the EAPs responsive to PEER's request pursuant to Exemption (7)(E). According to the NIPP, Dam Sector, dams operated by the USIBWC such as the Falcon and Amistad Dams, are considered possible terrorist threats because of the potential for massive downstream casualties. *See* First Fitten Decl.

ORDER-31

¶4. Moreover, the EAPS contain sensitive information, as outlined above, the disclosure of which could endanger public safety. As the EAPs contained information, in part, that would reveal the USIBWC's guidelines and procedures for an emergency such as a terrorist attack, the agency properly redacted portions of its EAPs pursuant to Exemption 7(E).

### iii.     Exemption 7(F)

Exemption 7(F) exempts from mandatory disclosure records or information compiled for law enforcement purposes the disclosure of which "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The USIBWC asserts this exemption to justify its withholding of the inundation maps that are part of the EAPs for the Amistad and Falcon Dams, as well as those in the binder located during the agency's processing of PEER's appeal. In reviewing claims under Exemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm, and the whether the deletions were narrowly made to avert the possibility of such harm. *Albuquerque Pub. Co. v. United States Dep't of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989).

PEER disputes the USIBWC's argument that release of these maps could reasonably be expected to endanger the life or physical safety of persons in the vicinity of the dams, noting that FEMA and the USACE regularly encourage dam owners and operators to share EAPs and inundation maps with downstream communities. *See* Section IV(c)(4)(i), above. However, in order to defeat the USIBWC's assertion of Exemption 7(F), PEER would need something more than evidence that different agencies have, at times, made different judgments about the security issues implicated by making inundation maps public. Further, there is good reason to believe that the USIBWC's decision in this instance was based on legitimate security considerations. The

ORDER-32

inundation maps identify and delineate areas that would be affected by floods in the event of dam failure. First Fitten Decl., at ¶ 22. The maps show estimated travel times for flood progression as well as peak elevation for waters in the event of dam failure. *Id.* The court agrees with the USIBWC that "with the ability to deduce the zones and populations most affected by dam failure, release of such maps could increase the risk of terrorist attack on the dams." *Id.* Indeed, the USIBWC is not alone in making the evaluation that such information "could reasonably be expected to endanger the life or physical safety of any individual." As discussed above, the United States District Court for the District of Utah found that inundation maps maintained by the U.S. Bureau of Reclamation ("BOR") were exempt from disclosure pursuant to Exemption 7(F). *Living Rivers, Inc. v. Bureau of Reclamation*, 272 F. Supp. 2d 1313 (D. Utah 2003). In *Living Rivers*, the court upheld BOR's withholding of inundation maps pursuant to Exemption 7(F). BOR asserted that disclosure could reasonably place risk of life or physical safety to those who occupy the downstream areas of the Hoover or Glen Canyon Dam.  *Id.*, at 1321. BOR explained that because the maps included such details as estimated travel times for flood progression, terrorists could use the maps to cause massive harm to the lives of others. *Id. See also, Milner v. Dep't of Navy*, 131 S. Ct. 1259 (2011) (Alito, J., concurrence) (stating regarding Exemption 7(F) that "[i]n most cases involving security information, it is not difficult to show that disclosure may endanger the life or physical safety of any individual."). The court finds that the USIBWC properly invoked Exemption 7(F) to withhold, in full, 77 inundation maps and the inundation maps contained in the EAPs.

ORDER-33

### d. Segregability

Even when an agency properly withholds a responsive record under one of FOIA's exemptions, it nevertheless must disclose any non-exempt information that is "reasonably segregable," 5 U.S.C. § 552(b), unless the exempt and non-exempt portions are "inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency must provide a "detailed justification" and not just "conclusory statements" to demonstrate that it has released all reasonably segregable information. *Mead Data Central*, 566 F.2d at 261. Agencies, however, need not provide a "detailed justification that would itself compromise the secret nature of potentially exempt information." *Id.* "Ultimately, to discharge its burden before the district court, the agency "must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable." *Schoenman v. F.B.I.,* 763 F. Supp.2d 173, 202 (D.D.C. 2011).

The USIBWC contends that it "provided all non-exempt information and disclosed all reasonably segregable information after redaction of exempt information." First Fitten Decl., at ¶24. Specifically, the agency notes that it evaluated every responsive document to determine whether there was any information that could be segregated and released." *Id.* The agency avers that any "records withheld in full were reports that were predecisional in nature reflecting inter- or intra-agency communications pertaining to legal or policy-related dam safety matters, with any non-exempt portions being inextricably intertwined with exempt portions." *Id.* The court finds that the USIBWC has discharged its burden of showing with reasonable specificity why documents could not be further segregated.

ORDER-34

### e.  Attorneys' Fees and Costs

PEER seeks an award of attorneys' fees and costs pursuant to 5 U.S.C. §552(a)(4)(E). Plaintiff's Complaint at 11 (Dkt. No. 1). The FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case ... in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff who has not substantially prevailed is not eligible to receive compensation for its attorneys. The court having granted Defendant's Motion for Summary Judgment, finds that PEER has not substantially prevailed, and thus denies its request for attorney's fees.

### f.  PEER's Request for a Written Finding

Pursuant to 5 U.S.C. §552(a)(4)(F)(i),

> Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding. The Special Counsel, after investigation and consideration of the evidence submitted, shall submit his findings and recommendations to the administrative authority of the agency concerned and shall send copies of the findings and recommendations to the officer or employee or his representative. The administrative authority shall take the corrective action that the Special Counsel recommends.

PEER seeks a written finding from the court in this case, based on, among other things, its claims that the agency initially denied the existence of the Joint Expert Panel Review, and that the agency exaggerated the threat of harm from releasing the withheld documents. However, as

ORDER-35

explained in detail above, the court has already rejected these arguments. *See* Section IV(c)(4)(i). PEER also argues that the USIBWC is motivated by "apparent hostility to this particular requester." Plaintiff's Cross Mot., at 32. The agency denies harboring a grudge of any kind, and asserts, correctly, that the record is devoid of proof of any hostility on the part of the USIBWC. Further, there is actually some evidence to suggest the opposite; that the USIBWC handled PEER's FOIA request in exactly the same manner that it has handled requests from other parties. For example, just as it did in the instant case, the USIBWC withheld the Joint Expert Panel Review from the Brownsville Herald pursuant to Exemption 5. Defendant's Opp./Reply, at 16. The court is aware that there is some litigation history between these parties, but finds that there is no evidence in this record to support PEER's claim that the USIBWC acted improperly toward it. Therefore, the court denies PEER's request for a written finding pursuant to Section 552(a)(4)(F)(i).

## V.   CONCLUSION

For all the reasons listed above, the court hereby GRANTS Defendant's Motion for Summary Judgment, and DENIES Plaintiff's Cross Motion for Summary Judgment.

It is hereby ORDERED that judgment be entered for the Defendant.


DATED this 20th day of March, 2012.


Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER-36