UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY,**<br><br>     **Plaintiff,**<br><br>          v.<br><br>**UNITED STATES SECTION, INTERNATIONAL BOUNDARY AND WATER COMMISSION, U.S.-MEXICO,**<br><br>     **Defendant.** | **Civil Action No. 11-261**<br><br>**MEMORANDUM ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT** |

This Freedom of Information Act matter is before the Court on remand from the United States Court of Appeals for the District of Columbia Circuit. 5 U.S.C. Sect. 552. The only issue remaining in this case is whether the "Joint Expert Panel Review of the Foundation, Embankment, and Concrete Structure for Amistad Dam" ("Joint Expert Report") is protected from disclosure under the "consultant corollary" to Exemption 5. *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 202 (D.C. Cir. 2014). Defendant U.S. Section of the International Boundary and Water Commission ("USIBWC") has moved for summary judgment. (Doc. No. 25). Plaintiff Public Employees for Environmental Responsibility ("PEER") opposes the motion and has also moved for summary judgment. (Doc. No. 26).

After considering the parties' briefs, the record, and all material properly before the Court, the Court grants USIBWC's motion for summary judgment and denies PEER's motion. The Court's reasoning follows:

1

I. BACKGROUND

On January 31, 2011, PEER filed this lawsuit to compel USIBWC to disclose the Joint Expert Report.[1] (Doc. No. 1). USIBWC moved for summary judgment, arguing that the Joint Expert Report is protected from disclosure under the "consultant corollary" to Exemption 5. (*Id.*). USIBWC asserted that it solicited the document from expert "consultants" in the course of its deliberative process. (*Id.*). PEER opposed the motion on the grounds that some of the experts were not consultants because they were members of a Mexican agency pursuing the interests of the Mexican government. (*Id.*).

On March 20, 2012, this Court granted USIBWC's motion for summary judgment. The Court held that the Joint Expert Report is pre-decisional and deliberative as to USIBWC. The Court further held that the "consultant corollary" applied regardless of whether Mexican officials assisted in preparing the Joint Expert Report for the following reasons:

> There is not the slightest indication that these experts represented any outside interests. It appears that their function was simply to provide accurate information for the USIBWC to use in making various determinations with respect to the Amistad Dam.

*Pub. Employees for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n*, 839 F. Supp. 2d 304, 321 (D.D.C. 2012). This holding was premised on USIBWC's affidavit assuring the Court that all experts functioned as technical advisors working toward a common goal: improving the safety of the Amistad Dam. (Doc. No. 6).

---

[1] The Court will only briefly recite the relevant facts and procedural background. The facts of this case are set out in greater detail in: *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 199 (D.C. Cir. 2014) and *Pub. Employees for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n*, 839 F. Supp. 2d 304 (D.D.C. 2012).

On May 17, 2012, PEER appealed these holdings. (Doc. No. 21). The Circuit agreed with this Court that USIBWC solicited the Joint Expert Report in the course of its deliberative process. *Pub. Employees for Envtl. Responsibility*, 740 F.3d 195. However, the Circuit did not rule on the question of whether a Mexican agency could be considered USIBWC's "consultant." *Id*. Instead, the Circuit demonstrated concern over the factual basis for determining whether a Mexican agency was actually involved and remanded the matter with instructions to further develop the factual record. *See id*. at 202. With the benefit of the additional briefing, the following description emerges:

The International Boundary and Water Commission ("IBWC") is a binational body created by the Treaty of Guadalupe Hidalgo between Mexico and the United States. (Doc. No. 25 at 2; Hernandez Declaration at 1). The IBWC is comprised of two sections: an American section ("USIBWC") and a Mexican Section, the *Comisión Internaciónal de Limites y Agua* ("CILA"). (*Id.*). Both sections are charged with working together to find "binational solutions" to water issues on the border of Mexico and the United States. (*Id.*).

As part of this binational cooperation, USIBWC and CILA agreed to "jointly" manage and operate the Amistad Dam. (*Id.* at 2-3). To accomplish this goal, USIBWC and CILA hire an inspection team to examine the structural integrity of the Amistad Dam every five years. (*Id.*). During the most recent inspection, USIBWC hired the United States Army Corps of Engineers ("USACE") due to its expertise with dam safety in the United States, and CILA hired the *Comision Nacional del Agua* ("CONAGUA") due to its experience with dam safety in Mexico. (*Id.*). While each section hired experts from its country, both sections directed their experts to work jointly as a "team." (*Id.*).

After the inspection team completed its review, it presented its findings and recommendations to the Joint Expert Panel. (Doc. No. 25 at 2; Hernandez Declaration at 5). The Joint Expert Panel consisted of representatives from USIBWC, CILA, USACE, and CONAGUA. (*Id.*). The Joint Expert Panel then performed its own investigations and jointly agreed upon certain changes to the inspection team's report. (*Id.*). The Joint Expert Panel used these agreed-upon recommendations to produce the Joint Expert Report at issue in this litigation.

The Joint Expert Report was then presented to the United States Commissioner of USIBWC and the Mexican Commissioner of CILA. (*Id.* at 5-6). According to USIBWC, each section then used the Joint Expert Report to decide which safety measures should be implemented. (*Id.*).

## II.  LEGAL STANDARD

The court will grant a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits or declarations or documentary evidence to the contrary. *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. *Defenders of Wildlife v. U.S. Border Patrol,* 623 F.Supp. 2d 83, 87

(D.D.C.2009).  An agency satisfies the summary judgment requirements in a FOIA case by providing the court and the Plaintiff with affidavits or declarations and other evidence which show that the documents in question were produced or are exempt from disclosure. *Hayden v. National Sec. Agency/Central Sec. Service,* 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied,* 446 U.S. 937 (1980).  Summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Trans Union LLC v. FTC,* 141 F.Supp.2d 62, 67 (D.D.C. 2001) (quoting *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir.  1981)).

    III.    DISCUSSION

  A. <u>CILA and CONAGUA Qualify as Consultants</u>

In light of the additional briefing, the Court will again examine whether CILA and CONAGUA qualify as "consultants" under the "consultant corollary" to Exemption 5. 5 U.S.C. Sect. 552 (b)(5).  The consultant corollary exists to promote the frank discussion of policy matters by ensuring that non-agency consultants acting "in an advisory role [are] able to express their opinions freely to agency decision-makers without fear of publicity."  *McKinley*, 647 F.3d at 339.  To this end, the Circuit has applied the consultant corollary where the non-agency consultant was solicited to provide frank and candid recommendations regarding the matter at hand.  *See, e.g., Public Citizen*, 111 F.3d 168 (C.A.D.C. 1997) (former President communicating with federal agency is consultant when other aspects of relationship do not "eclipse" consultative relationship);

*Formaldehyde*, 889 F.2d 1118, 1125 (D.C. Cir. 1989) ("human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances").  In the same vein, courts have consistently refused to apply the consultant corollary where the non-agency was not obligated to supply frank and truthful advice.  *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10 (2001) (Indian tribe advocating its own interests at the expense of others is not a consultant); *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 237 F. Supp. 2d 17, 26 (D.D.C. 2002) ("independent party promoting its own interests" during trade negotiations is not a consultant).

PEER asserts that CILA and CONAGUA are not consultants because they are Mexican agencies, and, therefore, have an incentive to prioritize issues affecting Mexican side over those that affect the American side.  (Doc. No. 26 at 14).  However, having examined the record, the Court finds nothing to suggest that the Mexican side faced unique dangers or that CILA and CONAGUA actually advocated Mexican interests over American interests.  (Doc. No. 25 at 8).  Quite the contrary, as USIBWC's affidavit avers, CILA and USIBWC, as joint members of the IBWC, focused solely on scientific issues and worked toward the same goal: promoting the safety of the Amistad Dam for the benefit of both sides.  (*Id*. at 6-7).

PEER further contends that the consultant corollary does not apply because CILA also played the role of "collaborator."  (Doc. No. 30 at 5-6).  However, this Circuit's prior rulings and the purpose of the consultant corollary demonstrate that the relevant question is not whether the non-agency played any additional role but whether the non-agency's additional role "eclipsed" or otherwise interfered with its obligation to "truth

6

and its sense of what good judgment calls for.'" *See McKinley*, 647 F.3d at 339; *Judicial Watch, Inc. v. U.S. Dep't of Transp.*, 950 F. Supp. 2d 213, 217 (D.D.C. 2013).  For instance, in *McKinley* the D.C. Circuit applied the consultant corollary to communications between the Board of Governors of the Federal Reserve System and the Federal Reserve Bank of New York regarding the extension of credit to other banks, even though the Federal Reserve Bank of New York had an independent statutory obligation to investigate these loans on its own.  647 F.3d at 339.  In that case, the Circuit found that the Federal Reserve Bank of New York's other obligation was consistent with its role as a consultant because the two entities were part of a joint effort to maintain a "sound and orderly financial system."  *Id*.; *see also Public Citizen*, 111 F.3d 168 (C.A.D.C. 1997) (other obligation did not "eclipse" consultative relationship).

      Similar to *McKinley*, the record before this Court demonstrates that CILA and USIBWC are part of a joint effort to achieve the same goal: the safety of the Amistad Dam.  Pursuant to that joint objective, CILA collaborated with USIBWC and its experts to provide candid opinions, assessments, and recommendations regarding the Amistad Dam.  Therefore, the fact that CILA both consulted and collaborated with its partner in this joint effort does not move this Court to disturb its prior ruling.

  B. <u>PEER Has Not Demonstrated Sufficient Cause to Look Outside the Scope of the Mandate</u>

      PEER also moves the Court to look beyond the scope of the Circuit's narrow mandate and reconsider its holding that USIBWC solicited the Joint Expert Report in the course of its deliberative process.  (Doc. No. 30 at 1).  A court must strictly comply with the mandate rendered by the reviewing court, unless there are subsequent factual discoveries or changes in the law that affect the outcome.  *See R.G. Johnson Co. v.*

*Barnhart*, 286 F. Supp. 2d 35, 37 (D.D.C. 2003).  PEER argues that USIBWC's assertion that the Joint Expert Report was pre-deliberative and pre-decisional as to IBWC invalidates the factual underpinning of both this Court's and the Circuit's rulings that USIBWC solicited the Joint Expert Report as part of its deliberative process.  (Doc. No. 30).  The Court disagrees.  The record demonstrates that USIBWC solicited CILA and CONAGUA's input in creating the Joint Expert Report and then used the Joint Expert Report to make certain decisions regarding the Amistad Dam, such as which safety measures to implement and the order in which to implement them.  Therefore, even though the Joint Expert Report may be pre-decisional and deliberative as to IBWC as well, disclosure of the Joint Expert Report would reveal the content of USIBWC's internal deliberations.  Accordingly, the factual record does not conflict with the previous rulings that USIBWC solicited the Joint Expert Report in the course of its deliberative process.

PEER also requests that the Court revisit its prior ruling that USIBWC met its burden of showing that the information in the Joint Expert Report is not segregable.  (Doc. No. 26).  However, PEER provides no new arguments or analysis that would alter this Court's prior holding.  Therefore, the Court will not reconsider this issue.

IV. CONCLUSION

For the reasons set forth *supra*, the Court finds that CILA and CONAGUA, Mexican agencies, participated in the preparation of the Joint Expert Report and holds that, in doing so, CILA and CONAGUA acted as "consultants."

**NOW, THEREFORE, IT IS ORDERED AS FOLLOWS:**

1. Defendant USIBWC's Motion for Summary Judgment is GRANTED;

2. Plaintiff PEER's Motion for Summary Judgment is DENIED;

3. JUDGMENT is entered in favor of Defendant USIBWC; and

4. This case is DISMISSED.

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE